IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WAYAKA PERFECTION, LLC, a Utah limited liability company; TODD SMITH, an individual; BLAKE GRAHAM, an individual; DAVE PITCOCK, an individual; BARB PITCOCK, an individual; ANDRE VAUGHN, an individual; TOTAL NUTRITION, INC. dba TNT, a Utah corporation,<br><br>Plaintiffs,<br>v.<br><br>YOUNGEVITY INTERNATIONAL, INC., a California corporation; STEVE WALLACH, an individual; MICHELLE WALLACH, an individual; DAVE BRISKIE, an individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER:**<br>• **GRANTING [20] DEFENDANTS' MOTION TO DISMISS AND**<br>• **TERMINATING [27] PLAINTIFFS' MOTION FOR LEAVE TO AMEND**<br><br>Case No. 2:16-cv-00315-DN<br><br>District Judge David Nuffer |

Plaintiff Wayaka Perfection, LLC ("Wayaka") and defendant Youngevity International, Inc. ("Youngevity") are both multi-level marketing companies. Wayaka and Youngevity market their products through their networks of distributors who recruit others who in turn may become distributors for the company.

Wayaka's president and founder, Todd Smith, and the other plaintiffs, Dave Pitcock, Barb Pitcock, Andre Vaughn, Blake Graham, and Total Nutrition, Inc. dba TNT (the "Distributor Plaintiffs," and together with Wayaka, "Plaintiffs"), have been distributors for Youngevity. When Distributor Plaintiffs became involved with Wayaka, Youngevity unilaterally terminated their distributorships and withheld their commissions.

Plaintiffs contend that Defendants have breached their contracts with the Distributor Plaintiffs and violated statutory and common laws by terminating their distributorships and

interfering with Wayaka's business.[1] Youngevity and its officers and directors, defendants Steve Wallach, Michelle Wallach, and Dave Briskie (together with Youngevity, "Defendants"), contend that Youngevity has acted within its rights under its Distributor Agreement and Policies and Procedures.

Defendants filed a Motion to Dismiss and/or Compel Arbitration (the "Motion to Dismiss").[2] Plaintiffs opposed the Motion to Dismiss (the "Opposition").[3] Defendants move to dismiss on three bases:[4]

1. Plaintiffs' claims are subject to a binding arbitration clause in Youngevity's Policies and Procedures;

2. the individual defendants are not subject to personal jurisdiction in the District of Utah; and

3. Plaintiffs' causes of action in tort fail to state a claim under Rule 12(b)(6).[5]

The Motion to Dismiss is GRANTED. The Youngevity arbitration clause requires all of Distributor Plaintiffs' claims to be decided by arbitration in San Diego, California, before the American Arbitration Association (the "AAA"), and Wayaka's claims are based on the same facts and inherently inseparable from Distributor Plaintiffs' claims. Moreover, this action is duplicative of ongoing litigation in the Southern District of California, which includes the same parties and claims.[6] For these reasons, the case is DISMISSED. Personal jurisdiction over the individual defendants is moot because the court will not exercise jurisdiction.

---

[1] First Amended Complaint (the "Complaint"), attached to Notice of Removal at pp. 62–84, docket no. 3, filed April 19, 2016.

[2] Docket no. 20, filed April 21, 2016.

[3] Docket no. 26, filed May 26, 2016.

[4] *Id.*

[5] Fed. R. Civ. P. 12(b)(6).

[6] *Youngevity International, Corp. v. Smith et al*, 3:16-cv-00704-BTM-JLB (S.D. Cal.) (the "California Federal Action").

In the same time frame as Defendants' Motion to Dismiss, Plaintiffs filed a Motion for Leave to Amend (the "Motion to Amend"), seeking to amend their First Amended Complaint to add new claims for defamation, false light, and business disparagement.[7] Defendants opposed the Motion to Amend.[8] Because Defendants have challenged the proposed new claims based on futility, whether to permit the amendment requires analysis of the merits of the claims. The futility of the proposed claims is a matter for arbitration. Accordingly, the Motion to Amend[9] is TERMINATED without a decision on the merits.

**Table of Contents**

Background .................................................................................................................... 3
    The Nature of the Dispute........................................................................................ 3
    The California Federal Action ................................................................................. 6
Discussion ...................................................................................................................... 8
    Plaintiffs' Claims Are Subject to an Arbitration Agreement. ................................... 8
        The Arbitrator Will Determine Arbitrability of Wayaka's Claims ..................... 9
    Plaintiffs' Claims Are Dismissed to Avoid Duplicative Litigation. ........................ 11
    Personal Jurisdiction Is Moot. ................................................................................ 13
    No Attorneys' Fees or Costs Are Awarded. .......................................................... 13
    The Motion to Amend Is Terminated. ................................................................... 14
Order ........................................................................................................................... 15

# BACKGROUND

## The Nature of the Dispute

Defendant Youngevity markets a broad range of consumer products, including dietary supplements, coffee, food products, cosmetics, clothing, and jewelry.[10] The Distributor Plaintiffs each have directly or indirectly held distributorships with Youngevity. Barb and Dave Pitcock

---

[7] Docket no. 27, filed May 26, 2016.

[8] Youngevity's Opposition to Plaintiffs' Motion for Leave to Amend, docket no. 34, filed June 15, 2016.

[9] *Id.*

[10] Complaint ¶ 22; Motion to Dismiss p. 3.

became Youngevity distributors in 2012 when Youngevity acquired the company they owned.[11] Dave Pitcock left Youngevity based on disputes with Youngevity's management in the fall of 2014, and Barb Pitcock continued to manage the distributorships through March 2016.[12] Mr. Vaughn joined Youngevity in 2011 when a different multi-level marketing company for which he worked was acquired.[13] Mr. Graham owns TNT, through which he has managed Youngevity distributorships.[14] Mr. Smith and Mr. Graham owned and operated TNT together until Mr. Graham bought out Mr. Smith's interest in 2015.[15]

Mr. Smith founded Wayaka after selling his interest in TNT to Mr. Graham and getting out of business with Youngevity.[16] Wayaka markets "organic and kosher healing products grown and cultivated on the unique 2,200 acre island in the Fiji archipelago called the Wayaka Island."[17] Some of the Distributor Plaintiffs expressed interest in Wayaka as a new venture in addition to their Youngevity distributorships.[18] Youngevity contends that the way the Distributor Plaintiffs pursued their new Wayaka ventures violated Youngevity's Policies and Procedures.[19] Youngevity responded in or about February 2016 by terminating their distributorships and reappropriating the commissions associated with the distributorships.[20]

---

[11] Complaint ¶ 52.
[12] *Id.* ¶¶ 58–59.
[13] *Id.* ¶ 43.
[14] *Id.* ¶ 4.
[15] *Id.* ¶ 36.
[16] *Id.* ¶¶ 38–39.
[17] *Id.* ¶ 26.
[18] *Id.* ¶¶ 37, 39, 49–50, 57, 60.
[19] Opposition pp. 3–5.
[20] Complaint ¶ 40.

TNT had developed certain marketing tools for their Youngevity distributorships, including the website wallachonline.com, the phone number 1-800-WALLACH, and other media items.[21] TNT alleges that Defendants interfered with TNT's efforts to sell these assets to other Youngevity distributors by communicating to potential buyers that Youngevity would refuse to approve the sale.[22]

Youngevity distributors operate under the company's Policies and Procedures.[23] The Policies and Procedures impose no restriction on a distributor's participation or sales activity in other businesses or programs.[24] However, distributors are prohibited under the Policies and Procedures from "cross-recruiting" from Youngevity's ranks or using Youngevity distributor lists for unauthorized purposes.[25] The Policies and Procedures include a dispute resolution clause in Section J9 (the "Arbitration Agreement"), which provides in pertinent part:

> **In the event of a dispute with the Company**, Distributor and the Company agree to participate in mediation in an earnest attempt to resolve the dispute prior to **submitting it to binding arbitration** pursuant to the Commercial Arbitration Rules then in effect of the American Arbitration Association . . . Such Arbitration shall occur in San Diego, California.[26]

This case is a dispute between "the Company," Youngevity, and its distributors or former distributors and their affiliates. Plaintiffs sued defendants in this action, asserting claims for (1) declaratory judgment; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) conversion; (5) tortious interference with existing contractual relations as to Distributor Plaintiffs' downlines; (6) tortious interference with existing contractual relations as to

---

[21] *Id.* ¶¶ 30, 37, 41.

[22] *Id.* ¶¶ 41, 42.

[23] Policies and Procedures, Motion to Dismiss, Ex. A, docket no. 20-1, filed April 21, 2016.

[24] Policies and Procedures, E6.

[25] Policies and Procedures, E7, E12.

[26] Policies and Procedures, J9 (emphasis added).

potential Wayaka recruits; (7) tortious interference with prospective economic advantage; (8) civil conspiracy; (9) unfair business practices under California Business & Professional Code §§ 17000 *et seq.*; (10) fraud/negligent misrepresentation; and (11) injunctive relief.[27] This case was filed in Utah state court, but Defendants removed it to federal court on April 19, 2016.[28]

## The California Federal Action

Youngevity filed suit against Wayaka and others in the Southern District of California on March 23, 2016 (the "California Federal Action").[29] The California Federal Action names each of the Plaintiffs in this case except Barb Pitcock[30] as defendants in that case, and adds some defendants who are not parties to this suit.[31] The California Federal Action was filed six days after Plaintiffs filed this suit in the Fourth Judicial District Court of Utah on March 17, 2016,[32] but 27 days before this suit was removed to the District of Utah on April 19, 2016.[33]

In the California Federal Action, Youngevity has asserted multiple claims, including Lanham Act violations, common law torts, and violations of California business and civil codes.[34] In response to Youngevity's Third Amended Complaint in the California Federal Action, Wayaka and the other Plaintiffs in this action, including Barb Pitcock, filed a counterclaim against Youngevity (the "California Counterclaim").[35] The California Counterclaim, like this suit, includes claims for declaratory judgment regarding the interpretation

---

[27] Complaint ¶¶ 62–131.

[28] Notice of Removal, docket no. 3, filed April 19, 2016.

[29] Complaint, California Federal Action, ECF no. 1, filed March 23, 2016.

[30] Barb Pitcock is, however, a party to the California Federal Action as a counter claimant.

[31] Third Amended Complaint, California Federal Action, ECF no. 64, filed December 21, 2016.

[32] Notice of Removal at ¶ 3, Ex. A.

[33] *Id.* at p. 5.

[34] Third Amended Complaint, California Federal Action.

[35] Answer and Counterclaim, California Federal Action, ECF no. 70, filed January 18, 2017.

and application of the Youngevity Policies and Procedures; breach of Youngevity's Policies and Procedures; breach of the covenant of good faith and fair dealing; conversion of the distributorships and related commissions; tortious interference with existing contractual relations as to Distributor Plaintiffs' downlines; tortious interference with existing contractual relations as to potential Wayaka recruits; tortious interference with prospective economic advantage; unfair competition under the California Business and Professional Code, and fraud/negligent misrepresentation as to Youngevity's expansion into Mexico.[36] The California Counterclaim also includes the claims Plaintiffs have sought to add by amendment in this suit: defamation; false light; and business disparagement.[37]

The litigation in the Southern District of California has advanced while in this suit the Motion to Dismiss and Motion to Amend have been pending. The Southern District of California has held a number of hearings and rendered a number of decisions. The parties have conducted discovery, and that court has addressed discovery disputes.[38] The Southern District of California has entered an injunction against Plaintiffs prohibiting the use of the likeness of Youngevity or its founder, as well as the Wallach website and phone number.[39] The parties are submitting—or resubmitting in some instances—motions for summary judgment on each other's claims, which will be argued at hearings on January 3, 2018 (Youngevity's claims) and February 7, 2018 (the Wayaka parties' counterclaims).[40]

---

[36] *Id.* Although the factual basis asserted for the claims is the same as that asserted in this suit, Defendants have excluded causes of action for civil conspiracy and injunctive relief from the California Counterclaim.

[37] *Id.*

[38] Order on Discovery Issues, California Federal Action, ECF no. 198, filed September 22, 2017.

[39] Order Granting Plaintiff's Motion for Preliminary Injunction, California Federal Action, ECF no. 58, filed December 1, 2016.

[40] Scheduling Order Re: Parties' Motions for Summary Judgment, California Federal Action, ECF no. 263, filed October 31, 2017.

## DISCUSSION

## Plaintiffs' Claims Are Subject to an Arbitration Agreement.

Dismissal is also appropriate because Plaintiffs' claims are subject to the Arbitration Agreement between Youngevity and the Distributor Plaintiffs. The Arbitration Agreement[41] in Youngevity's Policies and Procedures provides that Youngevity and its distributors, "in the event of a dispute with [Youngevity]," will submit their dispute to binding arbitration before the AAA, after an earnest attempt at mediation.[42] Defendants assert that Plaintiffs' claims should be compelled to arbitration and dismissed in this action based on the Arbitration Agreement.[43] Plaintiffs respond without elaboration or authority that "for a variety of reasons, the arbitration provision is unenforceable under California law and does not govern this dispute."[44] Plaintiffs do not otherwise dispute that their claims are arbitrable.

The Arbitration Agreement provides that an arbitrator will determine the arbitrability of Distributor Plaintiffs' claims. First, it adopts "the Commercial Arbitration Rules then in effect of the American Arbitration Association." Those rules clearly defer the decision of arbitrability to the arbitrator:

> R-7. Jurisdiction
> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.[45]

---

[41] Policies and Procedures, J9.

[42] *Id.*

[43] Motion to Dismiss pp. 11–15.

[44] *Id.*

[45] R-7 (a) Commercial Arbitration Rules and Mediation Procedures, American Arbitration Association (2013).

Because the parties "clearly and unmistakably agreed to arbitrate arbitrability, all questions of arbitrability—including the question of whether claims fall within the scope of the agreement to arbitrate—[must] be resolved by an arbitrator."[46]

Plaintiffs argue that the District of Utah lacks authority to compel arbitration in San Diego, California, which is the forum identified in the Arbitration Agreement.[47] Plaintiffs are correct, but this argument only eliminates a remedy on the motion. The Tenth Circuit follows the majority approach that "[w]here the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under § 4."[48] In other words, "a district court lacks authority to compel arbitration in other districts, or in its own district if another has been specified for arbitration."[49] This court thus lacks authority to order the parties to arbitrate in San Diego, California. But because Defendants have asserted their rights under the Arbitration Agreement, Plaintiffs' claims must be stayed or dismissed. If claims filed in court belong in arbitration, then that court lacks power to proceed on the merits of the claims.[50]

**The Arbitrator Will Determine Arbitrability of Wayaka's Claims**

Wayaka is not a signatory to the Arbitration Agreement because—although Wayaka was founded by Mr. Smith, a former Youngevity distributor[51]—Wayaka has never been a distributor for Youngevity. Wayaka seeks recovery under the Sixth Cause of Action for tortious interference with existing contractual relations as to potential Wayaka recruits and the Ninth Cause of Action

---

[46] *Belnap v. Iasys*, 844 F.3d 1272, 1284 (10th Cir. 2017).

[47] Opposition pp. 18–19.

[48] *Ansari v. Qwest Comms. Corp.*, 414 F.3d 1214, 1219 (10th Cir. 2005).

[49] *Id.* at 1220 (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 328 (7th Cir. 1995)).

[50] *Meyer v. Dans un Jardin, S.A.*, 816 F.2d 533, 538 (10th Cir. 1987).

[51] *Id.* ¶ 26.

under the California Business and Professional Code based on the same allegations.[52] Wayaka claims that Youngevity interfered with Wayaka's ability to recruit distributors by terminating the distributorships of distributors who associated with Wayaka.[53] Wayaka's claims are likely arbitrable under federal common law because the claims are "intimately founded in and factually intertwined with" the claims between Youngevity and its distributors.[54]

Even if Wayaka cannot be compelled to arbitrate as a nonsignatory, arbitration by the other Plaintiffs is nonetheless appropriate. "Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement."[55] At the very least, Wayaka's claims should be stayed pending arbitration by the Distributor Plaintiffs.

Because Plaintiffs' claims are subject to the Arbitration Agreement, this action must be either stayed or dismissed. The circumstances support dismissal. While a court cannot dismiss an action where the defendant has moved only for a stay pending arbitration under Section 3 of the Federal Arbitration Act (the "FAA"),[56] Defendants did not move for a stay; rather, they moved to dismiss and compel arbitration.[57] The rule requiring a stay where a party has filed suit on a claim subject to arbitration "was not intended to limit dismissal of a case in the proper circumstances."[58] "The weight of authority clearly supports dismissal of the case when all of the

---

[52] *Id.* ¶¶ 73–78, 89–94.

[53] Complaint ¶¶ 73–78, 89–94.

[54] *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 (4th Cir. 2000) (citing *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993)).

[55] *Moses H. Cone Memorial Hosp.*, 460 U.S. at 20.

[56] *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994) (citing 9 U.S.C. § 3).

[57] Motion to Dismiss.

[58] *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

issues raised in the district court must be submitted to arbitration."[59] The action is therefore DISMISSED because the claims are subject to the Arbitration Agreement.

No decision is rendered on Defendants' argument under Rule 12(b)(6) that Plaintiffs fail to state a claim for relief under their causes of action sounding in tort.[60] This court does not have authority to decide the merits of claims that are subject to arbitration.[61]

### Plaintiffs' Claims Are Dismissed to Avoid Duplicative Litigation.

Based on the relative progression of the California Federal Action, which includes counterclaims against Youngevity by Plaintiffs, the issue of duplicative litigation arises *sua sponte*.[62] The Supreme Court's decision in *Colorado River Water Conservation District v. United States* supports dismissal of an action where courts find that they are exercising concurrent jurisdiction.[63] In cases of concurrent jurisdiction between federal district courts, "the general principle is to avoid duplicative litigation."[64] To determine whether dismissal is proper in the event of an exercise of concurrent jurisdiction, a federal court may consider such factors as:

1. which court first assumed jurisdiction over property;
2. the inconvenience of the forum;
3. the desirability of avoiding piecemeal litigation; and

---

[59] *Id.* (citing *Sea–Land Service, Inc. v. Sea–Land of P.R., Inc.*, 636 F. Supp. 750, 757 (D. Puerto Rico 1986); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir.1988) (expressly holding that 9 U.S.C. § 3 does not preclude dismissal); *Hoffman v. Fidelity & Deposit Co. of Md.*, 734 F. Supp. 192, 195 (D.N.J.1990); *Dancu v. Coopers & Lybrand*, 778 F. Supp. 832, 835 (E.D.Pa.1991)).

[60] Motion to Dismiss pp. 15–18.

[61] *Meyer*, 816 F.2d at 538.

[62] That existence of that litigation also suggests the issue of waiver of the Arbitration Agreement.

[63] 424 U.S. 800, 817 (1976).

[64] *Id.* at 818.

4. the order in which jurisdiction was obtained by the concurrent forums.[65]

"No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required."[66] Certain "exceptional circumstances" also support dismissal, including "the absence of any substantial progress in the federal-court litigation."[67]

The relevant *Colorado River* factors weigh in favor of dismissal. The first factor, which court first assumed jurisdiction over the property at issue in the case, does not apply because these competing cases do not involve claims *in rem*.

The second factor, the inconvenience of the forum, carries little apparent weight where the parties have demonstrated the ability to litigate in either district.

The factor of "avoiding piecemeal litigation" carries the most weight. Litigation between the parties has progressed further in the Southern District of California than it has here. Discovery is underway,[68] and that court has held multiple hearings and issued multiple decisions in the case. The Southern District of California has entered an injunction against Plaintiffs.[69] And that court has instituted a scheduling plan for addressing the multiple dispositive motions pursued by the parties. The parties are submitting, or resubmitting, their motions for summary judgment, which will be argued at hearings that have already been scheduled in the Southern

---

[65] *Id.*

[66] *Id.* at 818–19.

[67] *Id.* at 819–20. *See also Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

[68] Order on Discovery Issues, California Federal Action, ECF no. 198, filed September 22, 2017.

[69] Order Granting Plaintiff's Motion for Preliminary Injunction, California Federal Action, ECF no. 58, filed December 1, 2016.

District of California.[70] Under the circumstances, this court risks duplicative litigation by retreading ground already covered by the Southern District of California.

The final factor, the order in which jurisdiction was obtained by the concurrent forums, also favors dismissal of this action. The California Federal Action was filed six days after Plaintiffs filed this suit in the Fourth Judicial District Court of Utah on March 17, 2016,[71] but 27 days *before* this suit was removed to the District of Utah on April 19, 2017.[72] And, as explained above, the Southern District of California has exercised its jurisdiction in the dispute well before this court, which in the meantime has had pending the Motion to Dismiss and Motion to Amend. These factors support dismissal under the *Colorado River* doctrine.

## Personal Jurisdiction Is Moot.

Defendants moved to dismiss the claims against the individual defendants—Steve Wallach, Michelle Wallach, and Dave Briskie—on the additional basis that the District of Utah lacks personal jurisdiction over these defendants.[73] Because this action is dismissed based on the parties' agreement to arbitrate and the Southern District of California's concurrent jurisdiction, the court will not exercise jurisdiction over the individual defendants. No decision is required on Defendants' personal jurisdiction arguments.

## No Attorneys' Fees or Costs Are Awarded.

Defendants argue in their Motion to Dismiss that they are entitled to attorneys' fees and costs incurred in filing the Motion to Dismiss.[74] Youngevity's Policies and Procedures provide

---

[70] Scheduling Order Re: Parties' Motions for Summary Judgment, California Federal Action, ECF no. 263, filed October 31, 2017.

[71] Notice of Removal at ¶ 3, Ex. A.

[72] *Id.* at p. 5.

[73] Motion to Dismiss pp. 7–10.

[74] *Id.* p. 19.

that Youngevity "reserves the right to pursue reasonable legal recourse, as well as reimbursement by a Distributor for any expenses, including attorney's fees and legal fees, generated from a violation."[75] This provision is not mandatory. Youngevity only "reserves the right to pursue" its attorneys' fees and costs,[76] which leaves discretion to the court. Furthermore, the clause provides for a potential award of attorneys' fees and costs "generated from a violation."[77] Though Youngevity failed to disclose in its briefing,[78] a potential award of attorneys' fees and costs is reserved for "extreme cases of violations by a Distributor."[79] Because the claims in this action are deferred to arbitration or adjudication in the Southern District of California, no violation of the Policies and Procedures, let alone an extreme case, has been found. Defendants' request for attorneys' fees and costs is therefore DENIED.

## The Motion to Amend Is Terminated.

Plaintiffs seek with their Motion to Amend[80] to add three claims to their action against Defendants: defamation, false light, and business disparagement.[81] These proposed claims "do not attempt to cure deficiencies" raised in the Motion to Dismiss.[82] The claims concern recourse for the statements Defendants have allegedly made about Plaintiffs as a result of their dispute, including allegations in court and messages distributed to Youngevity distributors about the parties' dispute.[83] Because Defendants have challenged the proposed new claims based on

---

[75] Policies and Procedures, C6.

[76] *Id.*

[77] *Id.*

[78] Motion to Dismiss p. 19.

[79] Policies and Procedures, C6.

[80] Docket no. 20.

[81] Proposed Second Amended Complaint, docket no. 20-1, filed May 26, 2016.

[82] Motion to Amend p. 4.

[83] *Id.*

futility,[84] whether to permit the amendment requires analysis of the merits of the claims. Moreover, the claims are already included in the California Counterclaim.[85] The futility of the proposed claims, which are a "dispute with the Company" by distributors and their affiliates, is a matter for arbitration,[86] or for litigation in the California Federal Action. Accordingly, the Motion to Amend[87] is TERMINATED without a decision on the merits.

**ORDER**

IT IS HEREBY ORDERED that the Motion to Dismiss[88] is GRANTED based on the agreement to arbitrate Plaintiffs' claims and concurrent litigation in California. Plaintiffs' claims are DISMISSED without prejudice. No decision is reached as to whether the court has personal jurisdiction over the individual Defendants or whether Plaintiffs' tort claims fail to state a claim under Rule 12(b)(6).

IT IS FURTHER ORDERED that the Motion to Amend[89] is TERMINATED without a decision on the merits. The issues raised in the Motion to Amend are deferred to arbitration.

The Clerk is directed to close this case.

Dated November 7, 2017.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[84] Youngevity's Opposition to Motion to Amend, docket no. 34, filed June 15, 2016.

[85] Answer and Counterclaim, California Federal Action, ECF no. 70, filed January 18, 2017.

[86] Policies and Procedures, J9.

[87] *Id.*

[88] Docket no. 20.

[89] Docket no. 26.